## IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

JEFF RAWLINGS
WILLIAM CUNNINGHAM
AND TURNERWINDHAM LLC                                    **PLAINTIFF**

VS.                                              CAUSE NO. 2012-78 E

LUKE KOESTLER AND
SEVENTH KNIGHT, INC.                                     **DEFENDANT**

### SUMMONS

TO:   **LUKE KOESTLER
101 DEER HOLLOW
BRANDON, MS**

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND
YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the
Complaint to Jeff D. Rawlings, Rawlings & MacInnis, P.A., attorneys for the Plaintiff, whose
address is P.O. Box 1789, Madison, MS 39130-1789. Your response must be mailed or
delivered within thirty (30) days from the date of delivery of this summons and complaint or a
judgment by default will be entered against you for the money or other things demanded in the
complaint.

You must also file the original of your response with the Clerk of this Court
within a reasonable time afterward.

Issued under my hand and the seal of said Court, this the 9 day of
April _____, 2012.

**RANKIN COUNTY CIRCUIT CLERK**

REBECCA N. BOYD, CIRCUIT CLERK

BY: _____ D.C.

EXHIBIT
A

## IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

**JEFF RAWLINGS,**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**                                        **PLAINTIFFS**

**VS.**                                                           CAUSE NO. 2012-78 E

**LUKE KOESTLER AND**
**SEVENTH KNIGHT, INC.**                                         **DEFENDANTS**

### COMPLAINT

1.      The parties are:

(a)     Jeff Rawlings, William Cunningham and TurnerWindham LLC ("Plaintiffs");

(b)     Luke Koestler, an adult resident citizen of the State of Mississippi who may be served with process at 101 Deer Hollow, Brandon, Mississippi; and

(c)     Seventh Knight, Inc. ("7K"), a corporation which may be served with process upon its President, Luke Koestler, 101 Deer Hollow, Brandon, Mississippi.

2.      In the summer of 2008, Randy Anthony, then an employee of 7K, approached Jeff Rawlings with an "opportunity" to purchase shares in 7K. Time was represented to be of the essence since a 75 million dollar offer to purchase 7K was "on the table" and was set to close immediately. According to Randy Anthony, Luke Koestler was offering him the opportunity to buy shares at a discount as a reward for his work as an employee. Randy Anthony was then personally unable to procure funds to make the purchase so he presented this opportunity to Jeff Rawlings. Thereafter, Jeff Rawlings and Lamar Adams met with Randy Anthony and Luke

1

Koestler and during this meeting Luke Koestler stated that a 75 million dollar offer to purchase 7K had been made by a third party (whom he could not then disclose due to confidentiality requirements), 7K had accepted the offer and closing was imminent. According to Luke Koestler, the sale would net $10.00 per share. Luke Koestler represented that he was then the President of 7K, its majority shareholder and in complete control of 7K. In fact, timing was so important, the Anthony purchase would need to be made within 2 days of that meeting. According to Luke Koestler, 7K owned proprietary security software that was better than anything else on the market, thus the sale price.

3.     Relying upon the representations of Luke Koestler, Jeff Rawlings then purchased $200,000.00 worth of stock in 7K at a price of $2.00 per share. $200,000.00 was immediately paid to Luke Koestler by Jeff Rawlings.

4.     Jeff Rawlings subsequently purchased another 4,000 shares at $3.00 per share, again relying upon the representations of Luke Koestler.

5.     At approximately the same time, the same representations were made to TurnerWindham LLC. TurnerWindham LLC purchased $500,000.00 worth of stock in 7K. $500,000.00 was immediately paid to Luke Koestler by TurnerWindham LLC.

6.     Thereafter, Luke Koestler and 7K embarked upon a course of evasion, obfuscation, delay, nondisclosure and apparently, outright fraud. When pressed for a closing date of the 75 million dollar sale, Luke Koestler was always non-committal and was unable to provide any substantive information. Every few weeks or months, he would deliver just enough information to keep questioners at bay, couched in terms such as "great things are about to happen, but I can't tell you right now". Usually he hid behind the requirement of

2

"confidentiality", meaning it was inside information which he couldn't share. As a last resort, he represented to Jeff Rawlings that the 75 million dollar offer was "still on the table" but he was "looking for a better offer".

7.       Jeff Rawlings introduced William Cunningham to Luke Koestler some time in May, 2009. At the time, Luke Koestler needed additional investors because a "huge deal" was then in the works which would greatly benefit all shareholders shortly. Based upon the same representations made to Jeff Rawlings, William Cunningham made the following stock purchases: 11,667 shares on June 5, 2009 for $35,000.00; 6,000 shares on July 2, 2009 for $15,000.00; 40,000 on September 22, 2009 for $100,000.00; and 50,000 shares on March 5, 2010 for $50,000.00. A total of 107,667 shares for a total purchase price of $200,000.00, all of which was paid by William Cunningham to Luke Koestler. The pattern of evasion, obfuscation, delay, nondisclosure and fraud described above was repeated with William Cunningham.

8.       Luke Koestler knew at all relevant times that the positive representations that were being made to Plaintiffs were then false and misleading.

9.       The safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements made by Luke Koestler. Many of the specific statements were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Luke Koestler and 7K are liable for those false forward-looking statements because at the time each of those forward-

3

looking statements was made, he knew that the particular forward-looking statement was false when made. Moreover, to the extent that Luke Koestler and 7K issued any disclosures designed to "warn" or "caution" investors of certain "risks," those disclosures were also false and misleading since they did not disclose that Luke Koestler and 7K were actually engaging in the very actions about which they purportedly warned and/or had actual knowledge of material adverse facts undermining such disclosures.

10.     On information and belief, the representation of a 75 million dollar sale and all subsequent "sales" were false misrepresentations made by Luke Koestler and 7K to induce the Plaintiffs to make the purchases described above. To this day, Luke Koestler and 7K have refused to acknowledge the falsehood of these representations and continue to evade the issue. Plaintiffs anticipate that discovery will uncover the depth and breadth of the fraud perpetrated by Luke Koestler and 7K upon the Plaintiffs and other purchasers who are similarly situated.

11.     The actions of the Luke Koestler and 7K were fraudulent, grossly negligent, willful and/or intentional and constitute violation of common law duties under Mississippi law. Said actions render Luke Koestler and 7K liable for punitive, as well as actual, damages.

WHEREFORE, PREMISES CONSIDERED, Jeff Rawlings, William Cunningham and TurnerWindham LLC request the following relief:

A.     A judgment in favor of the Plaintiffs against Luke Koestler and Seventh Knight, Inc., jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.     An award of all attorney fees incurred;

C.      Punitive damages in an amount to be determined in accordance with Mississippi law, the Mississippi Punitive Damage Statute, and the constitutional guidelines of the United States Supreme Court; and

D.      Such other and/or further relief as the Court deems just and appropriate.

DATED:  March 25, 2012.

JEFF RAWLINGS,
WILLIAM CUNNINGHAM
AND TURNERWINDHAM LLC

By:_____
        Their Attorney

Jeff D. Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642

## IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

**JEFF RAWLINGS**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**                                  **PLAINTIFF**

**VS.**                                           CAUSE NO. _2012-78 E_

**LUKE KOESTLER AND**
**SEVENTH KNIGHT, INC.**                                   **DEFENDANT**

### SUMMONS

**TO:   SEVENTH KNIGHT, INC.**
**C/O IT'S PRESIDENT, LUKE KOESTLER**
**101 DEER HOLLOW**
**BRANDON, MS**

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to Jeff D. Rawlings, Rawlings & MacInnis, P.A., attorneys for the Plaintiff, whose address is P.O. Box 1789, Madison, MS 39130-1789. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this the _9_ day of ___April___, 2012.

**RANKIN COUNTY CIRCUIT CLERK**
REBECCA N. BOYD, CIRCUIT CLERK

BY: _Kirby Henderson_ _____ D.C.



## IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

**JEFF RAWLINGS,**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**                                           **PLAINTIFFS**

**VS.**                                            CAUSE NO. _2012-78 E_

**LUKE KOESTLER AND**
**SEVENTH KNIGHT, INC.**                                            **DEFENDANTS**

FILED
APR - 9 2012
REBECCA N. BOYD, CIRCUIT CLERK
BY _____

### COMPLAINT

1.      The parties are:

        (a)      Jeff Rawlings, William Cunningham and TurnerWindham LLC

("Plaintiffs");

        (b)      Luke Koestler, an adult resident citizen of the State of Mississippi who

may be served with process at 101 Deer Hollow, Brandon, Mississippi; and

        (c)      Seventh Knight, Inc. ("7K"), a corporation which may be served with

process upon its President, Luke Koestler, 101 Deer Hollow, Brandon, Mississippi.

2.      In the summer of 2008, Randy Anthony, then an employee of 7K, approached Jeff

Rawlings with an "opportunity" to purchase shares in 7K. Time was represented to be of the

essence since a 75 million dollar offer to purchase 7K was "on the table" and was set to close

immediately. According to Randy Anthony, Luke Koestler was offering him the opportunity to

buy shares at a discount as a reward for his work as an employee. Randy Anthony was then

personally unable to procure funds to make the purchase so he presented this opportunity to Jeff

Rawlings. Thereafter, Jeff Rawlings and Lamar Adams met with Randy Anthony and Luke

1

Koestler and during this meeting Luke Koestler stated that a 75 million dollar offer to purchase 7K had been made by a third party (whom he could not then disclose due to confidentiality requirements), 7K had accepted the offer and closing was imminent. According to Luke Koestler, the sale would net $10.00 per share. Luke Koestler represented that he was then the President of 7K, its majority shareholder and in complete control of 7K. In fact, timing was so important, the Anthony purchase would need to be made within 2 days of that meeting. According to Luke Koestler, 7K owned proprietary security software that was better than anything else on the market, thus the sale price.

3.      Relying upon the representations of Luke Koestler, Jeff Rawlings then purchased $200,000.00 worth of stock in 7K at a price of $2.00 per share. $200,000.00 was immediately paid to Luke Koestler by Jeff Rawlings.

4.      Jeff Rawlings subsequently purchased another 4,000 shares at $3.00 per share, again relying upon the representations of Luke Koestler.

5.      At approximately the same time, the same representations were made to TurnerWindham LLC. TurnerWindham LLC purchased $500,000.00 worth of stock in 7K. $500,000.00 was immediately paid to Luke Koestler by TurnerWindham LLC.

6.      Thereafter, Luke Koestler and 7K embarked upon a course of evasion, obfuscation, delay, nondisclosure and apparently, outright fraud. When pressed for a closing date of the 75 million dollar sale, Luke Koestler was always non-committal and was unable to provide any substantive information. Every few weeks or months, he would deliver just enough information to keep questioners at bay, couched in terms such as "great things are about to happen, but I can't tell you right now". Usually he hid behind the requirement of

"confidentiality", meaning it was inside information which he couldn't share. As a last resort, he represented to Jeff Rawlings that the 75 million dollar offer was "still on the table" but he was "looking for a better offer".

7.     Jeff Rawlings introduced William Cunningham to Luke Koestler some time in May, 2009. At the time, Luke Koestler needed additional investors because a "huge deal" was then in the works which would greatly benefit all shareholders shortly. Based upon the same representations made to Jeff Rawlings, William Cunningham made the following stock purchases: 11,667 shares on June 5, 2009 for $35,000.00; 6,000 shares on July 2, 2009 for $15,000.00; 40,000 on September 22, 2009 for $100,000.00; and 50,000 shares on March 5, 2010 for $50,000.00. A total of 107,667 shares for a total purchase price of $200,000.00, all of which was paid by William Cunningham to Luke Koestler. The pattern of evasion, obfuscation, delay, nondisclosure and fraud described above was repeated with William Cunningham.

8.     Luke Koestler knew at all relevant times that the positive representations that were being made to Plaintiffs were then false and misleading.

9.     The safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements made by Luke Koestler. Many of the specific statements were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Luke Koestler and 7K are liable for those false forward-looking statements because at the time each of those forward-

looking statements was made, he knew that the particular forward-looking statement was false when made. Moreover, to the extent that Luke Koestler and 7K issued any disclosures designed to "warn" or "caution" investors of certain "risks," those disclosures were also false and misleading since they did not disclose that Luke Koestler and 7K were actually engaging in the very actions about which they purportedly warned and/or had actual knowledge of material adverse facts undermining such disclosures.

10.    On information and belief, the representation of a 75 million dollar sale and all subsequent "sales" were false misrepresentations made by Luke Koestler and 7K to induce the Plaintiffs to make the purchases described above. To this day, Luke Koestler and 7K have refused to acknowledge the falsehood of these representations and continue to evade the issue. Plaintiffs anticipate that discovery will uncover the depth and breadth of the fraud perpetrated by Luke Koestler and 7K upon the Plaintiffs and other purchasers who are similarly situated.

11.    The actions of the Luke Koestler and 7K were fraudulent, grossly negligent, willful and/or intentional and constitute violation of common law duties under Mississippi law. Said actions render Luke Koestler and 7K liable for punitive, as well as actual, damages.

WHEREFORE, PREMISES CONSIDERED, Jeff Rawlings, William Cunningham and TurnerWindham LLC request the following relief:

A.    A judgment in favor of the Plaintiffs against Luke Koestler and Seventh Knight, Inc., jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.    An award of all attorney fees incurred;

C.    Punitive damages in an amount to be determined in accordance with Mississippi law, the Mississippi Punitive Damage Statute, and the constitutional guidelines of the United States Supreme Court; and

D.    Such other and/or further relief as the Court deems just and appropriate.

DATED:  March 25, 2012.

**JEFF RAWLINGS,**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**

By: _____
Their Attorney

Jeff D. Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642

5

## C E R T I F I C A T E

The undersigned, Becky Boyd, as Clerk of the Circuit Court of Rankin County,

Mississippi, hereby certifies that attached hereto are true copies of all process, pleadings,

orders and other papers on file in said civil action in the Circuit Court of Rankin County,

Mississippi in Civil Action No. 2012-78-E.

WITNESS MY HAND AND SEAL, this the 14th day of May, 2012

BECKY BOYD,
CIRCUIT CLERK, RANKIN COUNTY

BY: _Deb Riser_ D.C.





EXHIBIT

B

## IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

DATE: May 14, 2012

JEFF RAWLINS, WILLIAM CUNNINGHAM
AND TURNER WINDHAM, LLC                          PLAINTIFF

VS                                               CAUSE NO. 2012-78 E

                                                 DEFENDANT

LUKE KOESTLER AND SEVENTH KNIGHT, INC

### CLERK'S CERTIFICATE

I, REBECCA N. BOYD, CIRCUIT CLERK, OF RANKIN COUNTY,

MISSISSIPPI, DO HEREBY CERTIFY THAT THE FOREGOING PAGES CONTAIN

A TRUE AND CORRECT COPY OF THE ABOVE STYLED AND NUMBERED

CAUSE.

WITNESS MY HAND AND SEAL OF OFFICE, THIS THE 14TH DAY OF

MAY, 2012.

                              REBECCA N. BOYD,
                              CIRCUIT CLERK

                              BY: _Kelly Henderson_
                                  DEPUTY CLERK



IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

**JEFF RAWLINGS,**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**                                    **PLAINTIFFS**

F I L E D
APR - 9 2012
REBECCA N. BOYD, CIRCUIT CLERK
BY VH

**VS.**                                                   CAUSE NO. 2012-78 E

**LUKE KOESTLER AND**
**SEVENTH KNIGHT, INC.**                                    **DEFENDANTS**

## COMPLAINT

1.     The parties are:

(a)     Jeff Rawlings, William Cunningham and TurnerWindham LLC

("Plaintiffs");

(b)     Luke Koestler, an adult resident citizen of the State of Mississippi who

may be served with process at 101 Deer Hollow, Brandon, Mississippi; and

(c)     Seventh Knight, Inc. ("7K"), a corporation which may be served with

process upon its President, Luke Koestler, 101 Deer Hollow, Brandon, Mississippi.

2.     In the summer of 2008, Randy Anthony, then an employee of 7K, approached Jeff

Rawlings with an "opportunity" to purchase shares in 7K. Time was represented to be of the

essence since a 75 million dollar offer to purchase 7K was "on the table" and was set to close

immediately. According to Randy Anthony, Luke Koestler was offering him the opportunity to

buy shares at a discount as a reward for his work as an employee. Randy Anthony was then

personally unable to procure funds to make the purchase so he presented this opportunity to Jeff

Rawlings. Thereafter, Jeff Rawlings and Lamar Adams met with Randy Anthony and Luke

1

Koestler and during this meeting Luke Koestler stated that a 75 million dollar offer to purchase 7K had been made by a third party (whom he could not then disclose due to confidentiality requirements), 7K had accepted the offer and closing was imminent. According to Luke Koestler, the sale would net $10.00 per share. Luke Koestler represented that he was then the President of 7K, its majority shareholder and in complete control of 7K. In fact, timing was so important, the Anthony purchase would need to be made within 2 days of that meeting. According to Luke Koestler, 7K owned proprietary security software that was better than anything else on the market, thus the sale price.

3.      Relying upon the representations of Luke Koestler, Jeff Rawlings then purchased $200,000.00 worth of stock in 7K at a price of $2.00 per share. $200,000.00 was immediately paid to Luke Koestler by Jeff Rawlings.

4.      Jeff Rawlings subsequently purchased another 4,000 shares at $3.00 per share, again relying upon the representations of Luke Koestler.

5.      At approximately the same time, the same representations were made to TurnerWindham LLC. TurnerWindham LLC purchased $500,000.00 worth of stock in 7K. $500,000.00 was immediately paid to Luke Koestler by TurnerWindham LLC.

6.      Thereafter, Luke Koestler and 7K embarked upon a course of evasion, obfuscation, delay, nondisclosure and apparently, outright fraud. When pressed for a closing date of the 75 million dollar sale, Luke Koestler was always non-committal and was unable to provide any substantive information. Every few weeks or months, he would deliver just enough information to keep questioners at bay, couched in terms such as "great things are about to happen, but I can't tell you right now". Usually he hid behind the requirement of

2

"confidentiality", meaning it was inside information which he couldn't share. As a last resort, he represented to Jeff Rawlings that the 75 million dollar offer was "still on the table" but he was "looking for a better offer".

7.     Jeff Rawlings introduced William Cunningham to Luke Koestler some time in May, 2009. At the time, Luke Koestler needed additional investors because a "huge deal" was then in the works which would greatly benefit all shareholders shortly. Based upon the same representations made to Jeff Rawlings, William Cunningham made the following stock purchases: 11,667 shares on June 5, 2009 for $35,000.00; 6,000 shares on July 2, 2009 for $15,000.00; 40,000 on September 22, 2009 for $100,000.00; and 50,000 shares on March 5, 2010 for $50,000.00. A total of 107,667 shares for a total purchase price of $200,000.00, all of which was paid by William Cunningham to Luke Koestler. The pattern of evasion, obfuscation, delay, nondisclosure and fraud described above was repeated with William Cunningham.

8.     Luke Koestler knew at all relevant times that the positive representations that were being made to Plaintiffs were then false and misleading.

9.     The safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements made by Luke Koestler. Many of the specific statements were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Luke Koestler and 7K are liable for those false forward-looking statements because at the time each of those forward-

3

looking statements was made, he knew that the particular forward-looking statement was false when made. Moreover, to the extent that Luke Koestler and 7K issued any disclosures designed to "warn" or "caution" investors of certain "risks," those disclosures were also false and misleading since they did not disclose that Luke Koestler and 7K were actually engaging in the very actions about which they purportedly warned and/or had actual knowledge of material adverse facts undermining such disclosures.

10.     On information and belief, the representation of a 75 million dollar sale and all subsequent "sales" were false misrepresentations made by Luke Koestler and 7K to induce the Plaintiffs to make the purchases described above. To this day, Luke Koestler and 7K have refused to acknowledge the falsehood of these representations and continue to evade the issue. Plaintiffs anticipate that discovery will uncover the depth and breadth of the fraud perpetrated by Luke Koestler and 7K upon the Plaintiffs and other purchasers who are similarly situated.

11.     The actions of the Luke Koestler and 7K were fraudulent, grossly negligent, willful and/or intentional and constitute violation of common law duties under Mississippi law. Said actions render Luke Koestler and 7K liable for punitive, as well as actual, damages.

WHEREFORE, PREMISES CONSIDERED, Jeff Rawlings, William Cunningham and TurnerWindham LLC request the following relief:

A.     A judgment in favor of the Plaintiffs against Luke Koestler and Seventh Knight, Inc., jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.     An award of all attorney fees incurred;

C.      Punitive damages in an amount to be determined in accordance with

Mississippi law, the Mississippi Punitive Damage Statute, and the constitutional

guidelines of the United States Supreme Court; and

D.      Such other and/or further relief as the Court deems just and appropriate.

DATED:  March 25, 2012.

> JEFF RAWLINGS,
> WILLIAM CUNNINGHAM
> AND TURNERWINDHAM LLC
>
> By:_____
>         Their Attorney

Jeff D. Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642



WATKINS & EAGER

Mailing Address:
P.O. Box 650
Jackson, Mississippi 39205
Telephone: (601) 965-1900
Facsimile: (601) 965-1901

*Attorneys and Counselors at Law*

*est. 1895*

MICHAEL O. GWIN
Direct Dial: (601) 965-1972
mgwin@watkinseager.com

May 9, 2012



FILED
MAY 10 2012
REBECCA N. BOYD, CIRCUIT CLERK
BY

Becky Boyd, Clerk
Rankin County Circuit Court
Post Office Box 1599
Brandon, MS 39043

      RE:   Rawlings, et al. v. Koestler, et al.; In the Circuit Court of Rankin
            County, Mississippi; Cause No. 2012-78-E

Dear Ms. Boyd:

    Please find enclosed the original and one copy of a Motion for Thirty (30) Days to
Respond to Complaint in the above-referenced matter. Please file the original and return
the copy stamped "filed" in the enclosed envelope. By copy of this letter I have
forwarded the enclosed document to counsel opposite.

                Sincerely,

                WATKINS & EAGER PLLC

                Michael O. Gwin

MOG/meb
Enclosures
cc:    Jeff D. Rawlings (via electronic mail and U.S. mail)

# IN THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI

**JEFF RAWLINGS**                                                  **PLAINTIFFS**
**WILLIAM CUNNINGHAM**
**AND TURNERWINDHAM LLC**

**VS.**                                                         **CAUSE NO. 2012-78-E**

**LUKE KOESTLER AND**
**SEVENTH KNIGHT, INC.**                                        **DEFENDANTS**



## MOTION FOR THIRTY (30) DAYS
## TO RESPOND TO COMPLAINT

Defendants, Luke Koestler and Seventh Knight, Inc., without waiving any defenses under

Miss.R.Civ.P. 12 or otherwise, specially appear to request thirty (30) days to respond to the

Complaint filed in this matter, stating:

1.

The complaint in this matter was filed April 9, 2012.  Upon information and belief,

a response to the complaint is due May 14, 2012.

2.

Undersigned counsel has been contacted by the defendants to represent them.  At

this time, the undersigned counsel, has only undertaken to represent these two defendants

for the limited purpose of seeking additional time to evaluate the facts, evaluate potential

conflicts of interest and consider the necessity of additional counsel becoming involved.

3.

The facts of this matter, as reflected by the Complaint, extend over years and are

potentially complex.   Counsel is unable to adequately prepare to evaluate the foregoing

matter and prepare an answer within the current time allowed.

4.

For these reasons, counsel respectfully requests this Court to grant these defendants thirty (30) additional days, until June 14, 2012 to formulate a response to the Complaint.

5.

By making this request, these defendants specifically reserve and do not waive any defenses, including those defenses set forth under Miss.R.Civ.P. Rule 12. To the extent necessary, these defendants assert all such defenses.

6.

The undersigned counsel has contacted counsel for the plaintiff, Jeff Rawlings, and been advised that the plaintiffs are not in a position to agree to this request for thirty (30) additional days, at this time.

For the reasons set forth herein, Luke Koestler and Seventh Knight, Inc. respectfully request the Court to grant them an additional thirty (30) days until Thursday, June 14, 2012 to serve their response to the Complaint filed herein.

**Respectfully submitted,**

**LUKE KOESTLER AND SEVENTH KNIGHT, INC.**

BY: _____

MICHAEL O. GWIN

-2-

OF COUNSEL:

MICHAEL O. GWIN (MSB # 5086)
WATKINS & EAGER PLLC
400 East Capitol Street
Suite 300, Emporium Building
Post Office Box 650
Jackson, Mississippi 39205
Tel:    (601) 965-1900
Fax:    (601) 965-1901

## CERTIFICATE OF SERVICE

I, MICHAEL O. GWIN, do hereby certify that I have this date caused a true and correct

copy of the above and foregoing document to be forwarded by electronic mail and United States

Mail, postage fully prepaid, to the following:

Jeff D. Rawlings
Rawlings & MacInnis, P.A.
P. O. Box 1789
Madison, MS 39130-1789
jeff@rawlingsmacinnis.net

THIS, the 9th day of May, 2012.

MICHAEL O. GWIN